**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY FRY** | : |
| **1330 South Fair Street** | |
| **Arlington, VA 22202** | : |
| Plaintiff, | : |
| v. | : |
| **UBER TECHNOLOGIES, INC.** | : |
| **1455 Market Street, 4th Floor** | |
| **San Francisco, CA 94103** | : |
| Serve: National Registered Agents, Inc. | :   Case No. _____ |
| 1015 15th Street, NW, Suite 1000 | |
| Washington, DC 20005 | : |
| and | : |
| **MICHELLE DAVIS** | : |
| **717 Romford Drive** | |
| **Landover, MD 20785** | : |
| Defendants. | : |

**COMPLAINT FOR DAMAGES**
**(Negligence: SUV-Bicyclist Collision)**

Plaintiff, Kelly Fry, respectfully demands judgment against Defendants on the grounds and in the amount set forth below:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of parties.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

2. The Court is a proper venue for this action under 28 U.S.C. § 1391(b)(2) because the acts out of which the action arises occurred in the District of Columbia.

## PARTIES

3. Plaintiff, Kelly Fry, is an adult citizen of the Commonwealth of Virginia.

4. Defendant Uber Technologies, Inc. ("Uber") is a Delaware corporation, with its principal place of business in California.

5. Upon information and belief, Defendant Michelle Davis is an adult citizen of the State of Maryland and was the driver of the vehicle that struck Plaintiff.

6. At the time of the collision described herein, Defendant Davis was acting within the course and scope of her employment by Defendant Uber.

## FACTS: UBER

7. Uber is a car service that provides drivers to customers on demand through a cell phone application, or "app," in cities around the world.

8. The Uber app is free to download and install on a smartphone.

9. Through several forms of media, Uber represents to passengers and to the public that it subjects its drivers to rigorous screening procedures prior to allowing them to drive for Uber. Uber states that drivers must clear several screenings. Uber also represents to consumers that it continues to monitor the quality of its drivers on an ongoing basis through a rating system.

10. Uber makes money by selling rides—a passenger requests an Uber driver through the Uber app, Uber sends a driver to the passenger, the passenger is transported to her destination, and the passenger pays Uber by credit card.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

11. Uber dictates and collects the fares that passengers pay for rides; then, it pays its drivers a portion of the fares collected, and it keeps the remainder for itself.

12. Uber drivers are not allowed to collect any form of payment from passengers; rather, Uber drivers receive payment for their work directly from Uber.

13. In order to drive for Uber, drivers must use a GPS-enabled map function that Uber builds into its app. Among other things, this map function does the following:

   a. Shows Uber drivers real-time "heat maps" of where demand for rides is highest at a given time;

   b. Shows Uber drivers the starting points of their assigned rides;

   c. Shows Uber drivers the destinations of their assigned rides;

   d. Directs Uber drivers, via turn-by-turn GPS directions, on the route to follow in order to pick up their assigned rides; and

   e. Directs Uber drivers, via turn-by-turn GPS directions, on the route to follow from pickup to destination.

14. Uber requires that Uber drivers further actively engage with its app while driving in order to accept or decline additional assigned rides—even going so far as to routinely ping Uber drivers with new assigned rides as they are nearing the end of a first passenger's ride.

15. Uber drivers do not have the authority to retroactively adjust a fare upwards or downwards; in order to adjust a fare, they must request that Uber do so at its discretion.

16. If Uber's technology malfunctions, Uber drivers do not have the authority to accept cash from passengers; rather, they must ask Uber for reimbursement.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

17. Upon threat of termination, Uber subjects its drivers to a host of specific requirements concerning the performance of their driving duties. In the District of Columbia, these include, among others, the following:

    a. Drivers must drive four-door vehicles no more than 10 years old;

    b. Drivers must display the Uber logo on their vehicles;

    c. Drivers must remove from the vehicle any non-Uber corporate branding;

    d. Drivers must maintain their vehicles in "good" mechanical condition, with "no cosmetic damage" at all;

    e. Drivers must maintain their cars in an acceptably clean condition;

    f. Drivers must adhere to Uber's rules regarding tipping, to wit, by declining a first offer from a customer, although they may accept a second offer;

    g. Drivers must respond to ride requests within a timeframe that is acceptable to Uber;

    h. Drivers must maintain a ride request acceptance rate that is acceptable to Uber;

    i. Drivers must maintain a passenger review rating (a "star rating") that is acceptable to Uber; and

    j. Drivers must not call passengers who have requested a ride with a frequency that Uber determines is "excessive."

## **FACTS: COLLISION**

18. At approximately 9:30 a.m. on November 28, 2017, Defendant Davis was working as an Uber driver.

19. Defendant Davis was driving a Toyota sport utility vehicle.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

20. Defendant Davis had picked up a female passenger, who had booked a ride through the Uber app and was in the process of transporting that passenger to her destination.

21. While driving southbound on East Basin Drive/Ohio Drive, SW, Defendant Davis violently struck Ms. Fry, who was crossing the street as a cyclist, within a marked crosswalk, propelling Ms. Fry off her bicycle and causing her head (helmeted) to slam to the pavement.

22. As a direct result of being struck by the SUV, Plaintiff sustained severe injuries, including, but not limited to, cervical spine fractures and a C6-C7 herniation (which necessitated multiple surgical procedures to the cervical spine) and a traumatic brain injury.

23. As a further direct result of being struck by the SUV, Plaintiff has incurred, and will continue to incur, substantial medical expenses; has incurred, and will continue to incur, substantial wage losses; and has suffered, and will continue to suffer, extreme physical and emotional pain, suffering, and anguish, as well as other damages.

### COUNT I
**(Negligence:  All Defendants)**

24. Plaintiff incorporates by reference the foregoing paragraphs.

25. At all relevant times, Defendant Davis owed Plaintiff and others on the road a duty to drive the SUV in a safe, prudent, and appropriate manner consistent with motor vehicle safety and traffic laws then and there in effect.

26. Defendant Davis breached that duty in the following ways:

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

    a. by failing to pay full time and attention to the operation of the SUV;

    b. by failing to keep a proper lookout while driving the SUV;

    c. by driving the SUV while distracted;

    d. by failing to maintain proper control of the SUV;

    e. by failing to drive the SUV at a safe speed for the traffic conditions (including, among other things, the presence of many pedestrians and cyclists around the Tidal Basin);

    f. by failing to properly yield the right-of-way to persons lawfully within a crosswalk;

    g. by failing to timely apply brakes or otherwise take appropriate actions to avoid or minimize the effects of striking a cyclist; and/or

    h. by otherwise failing to adhere to the applicable traffic and motor vehicle regulations then and there in effect.

27. In breaching this duty, Defendant Davis violated road-safety statutes and regulations that were in full force and effect in the District of Columbia at the time, including without limitation D.C. Code § 50-2201.28 and D.C. Code § 50-1731. As a result, Defendant Davis was negligent *per se* under District of Columbia law.

28. As a direct and proximate result of Defendant Davis's negligence, Plaintiff suffered the injuries and damages set forth in paragraphs 22-23.

29. At the time of the negligence described in the preceding paragraphs, Defendant Davis was acting within the course and scope of her employment by Defendant Uber; accordingly, Defendant Uber is liable for Defendant Davis's negligence under the doctrine of *respondeat superior*.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, DC 20036

202-463-3030

WHEREFORE, Plaintiff, Kelly Fry, demands judgment against Defendants, Uber Technologies, Inc., and Michelle Davis, jointly and severally, in the form of compensatory damages in the full and just amount of Ten Million Dollars ($10,000,000.00), plus interest and costs.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all of the above claims.

>Respectfully submitted,
>REGAN ZAMBRI LONG PLLC
>
>By:  /s/ *Paul Cornoni*
>Paul Cornoni          D.C. Bar #489398
>pcornoni@reganfirm.com
>Christopher J. Regan    D.C. Bar #1018148
>cregan@reganfirm.com
>1919 M Street, NW, Suite 350
>Washington, DC 20036
>PH:  (202) 463-3030
>FX:  (202) 463-0667
>*Counsel for Plaintiff*